IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| HERBERT N. KENDRICK, | ) |
| Plaintiff, | ) |
| vs. | ) Cause No. 2:24-CV-361-PPS-AZ |
| CHIEF WILLIAM SHORT, *et al.*, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Pro se Plaintiff, Herbert N. Kendrick, alleges that following a visit to the hospital, he was wrongfully arrested for criminal trespass, subjected to a strip search, and detained for more than 100 days. The charges were dismissed. I previously granted the defendants' motion to dismiss without prejudice, but offered Kendrick the opportunity to file an amended complaint. Kendrick timely filed a motion to amend the complaint, and attached a proposed amended complaint. [DE 29, 29-1.] Before I had the opportunity to rule on the motion to amend, defendants (the City of Hammond, Chief William Short, and Officers Latiker and Hornyak) moved to dismiss the amended complaint pursuant to Fed. Rule Civ. P. 12(b)(6). For the reasons articulated below, most of the complaint will be dismissed but the claim for unlawful arrest will be allowed to move forward.

**Background**

This case was originally filed in the Northern District of Illinois, and transferred

here on October 9, 2024. [DE 10.] The following are the facts as they are described in the amended complaint, which I will accept as true for present purposes. Kendrick previously suffered a heroin addiction for nearly a decade. [Am Compl., DE 29-1 at 5.] After leaving a substance abuse treatment program at the Salvation Army's "Harbor Light" recovery program in Chicago, Kendrick began experiencing extremely painful chest quivers and headaches. [*Id.* at 8.] Instead of seeking medical attention in Chicago (he started to have doubts about the level of care he was receiving in Chicago), Kendrick chose to visit Franciscan Hospital in Hammond, Indiana. *Id.* The ER doctor concluded that Kendrick's ailment was possibly stress related. *Id.* After he was treated and while waiting for his ride to Chicago to arrive, Kendrick "decided to have hospital security call the Hammond authorities, so he can surrender himself on what he believed having an outstanding warrant for failing to pay court cost in Hammond City Court." [*Id.* at 8-9.]

Officer Latiker was the first to respond, and Latiker checked on the warrant and explained there were no active warrants out for Kendrick's arrest. [*Id.* at 9.] While he was waiting for his ride in the hospital waiting room, Kendrick became aware of a male and female who were watching him, and he noticed that Officer Latiker was joined by another police officer. *Id.* The three were conversing near the emergency room entrance. Soon thereafter, Defendants Latiker and Hornyak approached Kendrick and told Kendrick to leave and that "he couldn't wait any longer for his ride in the hospital's waiting room!" *Id.*

2

While Kendrick tried to make his case for why it would be unwise to leave the hospital waiting room so late, a third individual approached him and told him to go wait in the parking lot. *Id.* According to Kendrick, he explained his ride was en route, but Defendant Hornyak put handcuffs on him and transported him to Hammond City lockup. [*Id.* at 10.]

Upon arrival at the Hammond City Jail, John Does 1 and 2 took custody of Kendrick and he alleges he was subjected to a strip search or pat down at the Hammond City Jail, and was then transferred to the Lake County Jail in Crown Point, Indiana, where he "was subjected to an even more intrusive search, in that he was placed before a machine which exposed him to radiation." *Id.* Kendrick also claims at the Lake County Jail he was given medication which he chose not to ingest, placed in segregation, and had bodily waste thrown on him by an inmate. [*Id.* at 11-13.] Overall, Kendrick claims he languished for "105 days incarceration" before the trespassing charge was dismissed. [*Id.* at 1, 13.] While he was in custody, Kendrick was also allegedly assaulted. [*Id.* at 1.]

Kendrick claims there was also a conspiracy afoot. In particular, he says that Chief Short, Officer Latiker, and Officer Hornyak "engaged in a legal conspiracy involving with [Kendrick's] court-appointed counsel" in the criminal trespass case "[d]esigned for the purpose of thwarting any future consequence for having arrested Kendrick without the least probable cause!" [*Id.* at 12.]

Kendrick seeks compensatory damages in the amount of $30 million. [*Id.* at 20.]

3

As alluded to above, the amended complaint asserts claims against the City of Hammond, Officers Latiker and Hornyak, John Does 1-2 who are additional Police Officers with the Hammond Police Department, and William Short the Chief of the Hammond Police Department. The claims are brought under § 1983 for: unlawful arrest (Count I), conspiracy to access the courts (Count II), cruel and unusual punishment (Count III), excessive force (Count IV), malicious prosecution (Count V), intentional infliction of emotional distress (Count VI), and indemnification against the City of Hammond (Count VII). Defendants then filed a motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). [DE 31.] In response, Kendrick stated he would voluntarily withdraw Counts III, IV, and VI. [DE 35 at 2.] So only the counts for me to address are for unlawful arrest (Count I); conspiracy to access the courts (Count II); malicious prosecution (Count V); and indemnification (Count VII).

## Discussion

Under Federal Rule of Civil Procedure 8(a), Kendrick's complaint is required to contain "a short and plain statement showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a). Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). At this stage, I accept the complaint's allegations as true and draw all reasonable inferences in Kendrick's favor. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021). However, to avoid dismissal under Rule 12(b)(6), a claim for relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir.

4

2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But I am also mindful that a document "filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and internal citations omitted).

I.  **Count I - Search and Seizure**

In Count I of the amended complaint, Kendrick asserts that Officers Latiker and Hornyak (as well as John Does 1 and 2) "on July 1, 2022, without probable cause effectuated the lawless arrest of Kendrick or failed to intervene." [DE 29-1 at 13.] In addition, it alleges that Chief Short, in both his individual and official capacities, "engaged in a conspiracy to cover-up and/or furthered the same by arresting Kendrick without probable cause." [*Id.* at 14.]  This is a claim under the Fourth and Fourteenth Amendments.

Defendants argue that Kendrick concedes he was told to leave the Franciscan Hammond premises, and refused to comply with the directions, therefore his own actions directly caused his arrest for criminal trespass. [DE 32 at 6.] They argue "[b]y refusing to leave private property where he had no right to be, after being asked to leave, Kendrick furnished probable cause for his own arrest." [DE 32 at 6-7.] If this seems just a little bit too facile, it is.

First of all, the two cases cited by Defendants in both their memorandum in support and reply brief do not involve hospitals. [DE 32 at 6-7; 37 at 5.] *Lyberger v.*

5

*Snider*, 42 F.4th 807 (7th Cir. 2022), involved the arrest of people on a family's driveway who refused to leave when asked by the mother and father who lived in the house. *Id.* at 810-11, 813. Quoting the Illinois statute for trespass to real property, which provides a person commits trespass to real property when that person "remains upon the land of another, after receiving notice from the owner or occupant to depart," 720 ILCS § 5/21-3(a), the court found the police defendants had probable cause to arrest the three people for criminal trespass (which bars liability for wrongful arrest), because everyone agreed that the people followed the mother onto her family's property and then refused to leave. *Id.* at 813. This case is different from *Lyberger* in a number of respects: this case is based upon Indiana law (not Illinois); there is no allegation that anyone from the hospital ever asked Kendrick to leave; and query whether a hospital can be considered private property instead of public property. All parties in this case agree that Kendrick had just received medical care at the hospital and I don't think it's an easy conclusion to jump to that he had no right to be in the emergency room waiting area awaiting his ride right after he was discharged.

The other case cited by Defendants, *Kelley v. Myler*, 149 F.3d 641, 646-47 (7th Cir. 1999), also does not involve a hospital. There, a woman was handing out allegedly offensive leaflets by stopping cars entering and exiting a Wendy's parking lot, and walking in a grassy area in front of the restaurant. *Id.* at 644. A Wendy's employee asked her to leave, and then called the police when she refused. *Id.* After the police demanded she leave, the person still refused, and was ultimately arrested for criminal

6

trespass. Her main argument was she wasn't on Wendy's property, but on a public use easement, and the officers should have checked the property lines before arresting her. *Id.* at 646-47. The court found the officers had probable cause to arrest her for criminal trespass because the manager of the Wendy's told them she was on Wendy's private property and he wanted her to leave, and she was asked to leave several times but refused. Again, there is no evidence whatsoever that someone from the hospital wanted Kendrick to leave or asked him to leave, nor is there any allegation that he was being disruptive or dangerous towards any other people in the hospital.

In sum, the motion to dismiss is denied as to Count I. Kendrick has stated a valid claim against Officers Latiker and Hornyak, as well as John Does 1 and 2 for an unlawful seizure which resulted in the alleged unlawful arrest.

With regard to the claim against Chief Short contained in Count I, Kendrick has failed to state a claim. Kendrick alleges both an individual claim and an official capacity claim against Chief Short. The individual claim can be quickly disposed of: there is simply no allegation that he had anything to do with Kendrick's arrest at the hospital. And that is what is required to state an individual claim under § 1983. *See Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation") (internal citations and quotation marks omitted); *Pepper v. Village of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."). As for the official capacity claim, that

claim is simply another way of asserting a claim against a governmental entity. But to do so, there must be plausible allegations that an unconstitutional policy, custom or widespread practice caused the constitutional violation. *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) (to allege a viable official capacity suit against a municipal officer, "the entity's 'policy or custom' must have played a part in the violation of federal law."). Kendrick's complaint pleads no facts suggesting that a policy, practice, or custom of the Hammond Police Department led to the alleged constitutional violation. Kendrick highlights specific actions in his reply [DE 26 at 3], but the only specific allegations in the complaint are about the John Doe officers - who told him to leave the hospital, arrested him, and strip searched Kendrick, and actions taken against him at the Lake County Jail. There are no credible factual allegations to support any inference of a institutional custom. *See, e.g., Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (citations omitted) ("To succeed on this *de facto* custom theory, the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents. At the pleading stage, then, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom.").

     To sum up: the claims in Count I against defendants Latiker and Hornyak survive dismissal. But the claims against Chief Short in both his individual and official capacities (including the claim against the City of Hammond) will be dismissed.

Finally, defendants do not directly address the claims against John Doe's 1 and 2 and it is not even clear whether the defendants' response was filed on behalf of those anonymous defendants. [DE 31.] As such, for the time being at least, Count I against John Does 1 and 2 will remain pending. Once those anonymous defendants are identified in discovery, Kendrick will be allowed to amend the complaint to formally add them.

## II.   Count II - Section 1983 "Conspiracy"

Kendrick's amended complaint references the defendants having "met and agreed to thwart Kendrick [sic] rights to a fair trial and judicial review of charge of criminal trespass" and then caused him "to abdicate his appellate review of a meritorious claim for relief by missing his appeal in the 7th Circuit Court of Appeals." [DE 29-1 at 15.] This count is missing a lot of supporting details and is confusing.

Ultimately, to establish a conspiracy claim, "the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). There are no facts showing he was denied a fair trial because the State dismissed the criminal trespass charge against him in October 2022. [DE 29-1 at 13.] Additionally, regarding the allegation about appellate review (in a seemingly unrelated case), Kendrick attached to the amended complaint an order from a Northern District of Illinois case, No. 1:22-cv-1775, denying his application to proceed in forma pauperis and screening the complaint. That court found Kendrick did not

properly state a claim against Salvation Army employees who allegedly denied him substance abuse treatment because the Salvation Army could not have acted under color of state law as it is a private charity. [DE 29-2 at 14.] Kendrick filed an appeal, but failed to file the docketing statement required by Circuit Rule 3(c), so it was dismissed. [*Id.* at 16, 17.] Thus, there are no facts alleged that defendants deliberately interfered with his appeal. There is nothing to support the bare speculation that Chief Short or the officers conspired to interfere with Kendrick's appeal in the other case, or that they agreed to deny him a fair trial in this case. Therefore, Kendrick has failed to properly plead conspiracy.

### III.    Count V - Section 1983 "Malicious Prosecution"

To state a claim for malicious prosecution under section 1983, a plaintiff "must demonstrate that (1) he has satisfied the elements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014). Indiana law defines the elements of malicious prosecution as: "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Id.*

Defendants argue the officers had probable cause to arrest Kendrick for criminal trespass, which thereby negates any claim for malicious prosecution. [DE 37 at 8.] However, as I determined earlier in this order, the claim for unlawful arrest survives

10

this dismissal stage. But this claim fails for another reason. There is no evidence Chief Short or Officers Latiker or Hornyak were personally involved in the prosecution of Kendrick. "Liability for malicious prosecution extends to police officers who played a significant role in causing the prosecution of the plaintiff . . . ." *Smith v. Augustine,* No. 07 C. 81, 2009 WL 481639, at *9 (N.D. Ill. Feb. 25, 2009) (quotation marks omitted). To prove this, "plaintiff must show that the officers used improper influence on the prosecutor or made knowing misstatements to the prosecutor in order to secure prosecution." *Id.* The amended complaint merely alleges that Chief Short and Officers Latiker and Hornyak "were the direct proximate cause for Kendrick's false arrest" and/or his incarceration, but contains no allegations that Chief Short or the officers were involved in, or supervised, commented upon, contacted the prosecutor, or influenced in any way the course of the prosecution against Kendrick. Therefore, this count will be dismissed.

**IV.    Count VII - Indemnification**

In Count VII of the amended complaint, Kendrick asserts a claim for "indemnification" against the City of Hammond, premised on Ind. Code §§ 23-17-16-11 and 13. [DE 29-1 at 20.] However, as Defendants note, these provisions in the Indiana Code have nothing to do with whether the City of Hammond is authorized or required to pay any judgment for compensatory damages against Chief Short or the police officers. [DE 32 at 15.] This is academic, though, and harmless, that Kendrick accidentally quoted the wrong statute.

Defendants also allege "[t]he contingent nature of any such claim makes it a non-starter where, as here, all of plaintiff's other claims are deficient under Rule 8(a)." *Id.* But the wrongful arrest claim remains in this case. As the Seventh Circuit has established, "[w]e have warned repeatedly against trying to resolve indemnity before liability." *Doe v. City of Chicago*, 360 F.3d 667, 672 (7th Cir. 2024); *see also Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established."). At this point, it is unclear whether any of the Hammond police officers will be held liable under Section 1983. Here, Kendrick's only claim against the City of Hammond is a state law claim for indemnification in the event that judgment is entered against the officers on his section 1983 claim. Therefore, the indemnification claim is not ripe and it will be dismissed without prejudice. *See Hunter v. Long*, No. 2:15-CV-475-TLS, 2019 WL 4695463, at *4-5 (N.D. Ind. Sept. 26, 2019 ) (dismissing premature claim for indemnification without prejudice).

## Conclusion

For all of the above-mentioned reasons, Defendants' Motion to Dismiss the amended complaint [DE 31] is GRANTED IN PART and DENIED IN PART.

The motion [DE 31] is GRANTED as follows: Counts III, IV, and VI of the amended complaint are voluntarily withdrawn by Plaintiff and are DISMISSED WITHOUT PREJUDICE. Count VII for indemnification is premature, and also DISMISSED WITHOUT PREJUDICE. Counts II and V are DISMISSED WITH

12

PREJUDICE for failure to state a claim. As for Count I, the claims against Chief William Short in his individual and official capacities (the latter really being a claim against the City of Hammond) in Count I are DISMISSED WITH PREJUDICE.

The motion [DE 31] is DENIED as follows: Count I, for unlawful arrest, REMAINS PENDING against Officer Latiker, Officer Hornyak, and John Does 1 and 2.

The motion to amend the complaint, filed by Plaintiff Kendrick [DE 29] is GRANTED and the amended complaint [DE 29-1] is DEEMED FILED.

**SO ORDERED**.

ENTERED: September 12, 2025

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT